## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HARRY F. BALAZS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 11-4119-JWL |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's evaluation of the medical opinions, the court ORDERS that the decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.    Background**

Plaintiff applied for both DIB and SSI, alleging disability beginning September 17, 2008.  (R. 9, 126-34).  The applications were denied initially and upon reconsideration,

and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 9, 42-45, 76-78). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Michael D. Shilling on September 15, 2010. (R. 9, 22-41). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 9, 22-41). On September 24, 2010, ALJ Shilling issued his decision finding that although Plaintiff has a severe combination of impairments, he is not disabled within the meaning of the Act. (R. 9-16). Consequently, he denied Plaintiff's applications for benefits. (R. 15-16). Plaintiff sought, but was denied, Appeals Council review of the ALJ's decision. (R. 1-5). Therefore, the ALJ's decision became the final decision of the Commissioner of Social Security. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff timely filed this case, seeking judicial review of the Commissioner's decision. (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and

whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his

age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in weighing the medical opinions in the record and failed to apply the correct legal standard in evaluating the credibility of Plaintiff's allegations of limitations resulting from his symptoms, and that as a result of these errors the ALJ's RFC assessment is not supported by substantial record evidence.  The Commissioner argues that the ALJ applied the correct legal standard in evaluating credibility, and considered the medical opinions in accordance with the regulations, and that substantial record evidence supports his RFC findings.  The court agrees that remand is necessary because the ALJ erred in weighing the medical opinions.  Because evaluation of the medical opinions is part of a proper RFC assessment, the Commissioner on remand will be required to once again assess RFC, and that reassessment will necessarily include evaluating the credibility of Plaintiff's allegations.  Therefore, Plaintiff may make his arguments regarding those issues to the Commissioner on remand.  The court will not attempt to direct the outcome here.

## III.   Evaluation of Medical Opinions

Plaintiff's primary claim with regard to the medical opinions is that the ALJ did not apply the legal standard set out by the Tenth Circuit for weighing medical opinions. (Pl. Br. 18-20).  He argues that the ALJ did not weigh the opinions individually, but

5

merely "lumped" the opinions of Dr. Moncure[1] and Dr. Carson, and discounted them together, without individually applying the regulatory and case law factors for weighing medical opinions. He argues that the ALJ did not point to the "objective medical evidence" upon which he allegedly relied to determine that the "extreme limitations" suggested by Dr. Moncure and Dr. Carson could not be credited. He argues that "the ALJ did not give Dr. Moncure's opinions 'the detailed and specific review that the agency's own regulation requires.'" (Pl. Br. 19) (quoting Goatcher v. Dep't of Health and Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). He concludes his argument by asserting that the ALJ's discussion of the medical opinions of the state agency physicians also falls

---

[1]Plaintiff asserts that Exhibit 10F is the medical opinion of Dr. Moncure, one of Plaintiff's physicians at the University of Kansas (KU) Hospital. (Pl. Br. 18 & n.1). The "Court Transcript Index" identifies Exhibit 10F as a medical opinion "from Sherwood Barefoot MD." (Doc. 9, Attach. 2, p.3). The ALJ referred to Exhibit 10F as the "opinion of Sherwood Barefoot, M.D." (R. 14). Dr. Carson stated he had "reviewed the form called 'Medical Opinion: Ability to Do Work-Related Activities (Physical)' dated August 5, 2009 that was completed by Dr. Michael Moncure," and his reference seems to identify Exhibit 10F. (R. 759). At the hearing, the ALJ noted that Exhibit 10F was identified as the opinion of Dr. Sherwood Barefoot, and asked, "Is that correct?" (R. 25). Plaintiff, and his counsel responded that Dr. Barefoot was Plaintiff's original trauma surgeon from KU Hospital, but that the exhibit was actually from Dr. Moncure. (R. 25-26). The ALJ commented, "Well it didn't do much good for him to try and print his name, did it?" (R. 25).

The ALJ did not explain in the decision how he resolved this ambiguity, but merely discussed Exhibit 10F as the opinion of Dr. Barefoot. The court finds that the true identity of the physician who authored the opinion is unnecessary to the disposition of this case. Nonetheless, because Plaintiff is in the best position to know his physicians, because Exhibit 10F has a facsimile header which indicates it was submitted from the law offices of Plaintiff's counsel, and because Dr. Carson identified the August 5, 2009 opinion as the opinion of Dr. Moncure, the court refers to Exhibit 10F as the opinion of Dr. Moncure.

short of the Tenth Circuit standard for weighing medical opinions. Id. at 20. The Commissioner argues that the ALJ properly considered the medical opinion evidence, and he points to record evidence which in his view supports the ALJ's evaluation of the evidence. (Comm'r Br. 11-13).

### A.  The ALJ's Discussion and Evaluation of the Medical Opinions

At his step two analysis, the ALJ stated, "Consultative examiner, Stanley Mintz, Ph.D., recommended that the claimant be re-trained for new work." (R. 11). In his RFC assessment, the ALJ provided this discussion of the medical opinion evidence"

> A consultative examination was completed on May 16, 2009, by Alan Cornett, D.O., at the request of the State agency. The claimant had complaints of traumatic arthralgias and abdominalgia. The claimant was using oxycodone for pain relief. The claimant reported waking at night with pain. The claimant reported he was no longer able to do woodworking. He had diminished range of motion bilaterally in his shoulders and right wrist. The claimant had a normal gait and station, and did not need an assistive device. The claimant had diminished Jamar strength on the right side but no muscle wasting or dexterity loss. There was no abdominal tenderness or hepatosplen[o]megaly. (Exhibit 6F [(R. 579-84)]).
>
> As for the opinion evidence, the opinion of State agency physicians and psychologists are given significant weight in this decision. (Exhibits 12F, 13F, 14F, 15F [(R. 711-34)]). Less weight is given to the opinion of Sherwood Barefoot, M.D. (Exhibit 10F [(R. 615-18)]) and confirmation by Ron Carson, M.D. (Exhibit 18F [(R. 759)]). These opinions have been considered and are given partial weight (for example the claimant is limited to sedentary work), but the extreme limitations are not supported by objective medical evidence (such as the projection that the claimant would need to miss work several times a month). More weight is given to the objective findings of the consultative examiners, and it is particularly noted that the physical consultative examiner found little to no functional impairment of the claimant. (Exhibits 6F and 9F [(R. 579-84, 610-14)]).

7

(R. 14). The decision contains no other mention, summarization, discussion, or evaluation of any medical opinions.

### B. Analysis

A physician who has treated a patient frequently over an extended period of time (a treating source)[2] is expected to have greater insight into a patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). Consequently, a treating physician's opinion about the nature and severity of plaintiff's impairments must be given controlling weight by the Commissioner if the opinion is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins, 350 F.3d at 1300-01 (citing Soc. Sec. Ruling (SSR) 96-2p). The ALJ must first decide whether the treating source opinion is worthy of controlling weight, and in making that decision, he determines "whether the opinion is 'well-supported by medically acceptable clinical and

---

[2]The regulations define three types of "acceptable medical sources:"
"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.
"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

8

laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Here, the decision does not reveal whether the ALJ determined if Dr. Moncure or Dr. Carson were treating sources or whether their opinions might be worthy of controlling weight. As the Commissioner points out, the ALJ stated he had considered the "opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (R. 13). However, other than that bald assertion, the decision does not reveal whether the ALJ considered that the physicians' might be treating sources whose opinions might be accorded controlling weight.

The court notes that Dr. Moncure (or Dr. Barefoot) is a physician at KU Hospital whereas Dr. Carson is a physician with the Shawnee County Health Agency. (R. 25-26, 759). Moreover, the record contains numerous treatment notes from both the KU Hospital and the Shawnee County Health Agency, suggesting that Dr. Moncure or Dr. Carson, or both, might be a "treating source" whose opinion might be worthy of controlling weight. (R. 248-578, 593-609, 739-58). The ALJ erred both by failing to make a finding whether Drs. Moncure and Carson were "treating sources" within the meaning of the regulations, and by failing to make a finding as set forth in Watkins, 20 C.F.R. §§ 404.1527, 416.927, and SSR 96-2p whether their opinions were worthy of controlling weight.

If the treating source opinion is not given controlling weight, the inquiry does not end. Watkins, 350 F.3d at 1300. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher, 52 F.3d at 290). However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

Although this court is careful not to require an ALJ to provide a factor-by-factor analysis of the medical opinions, the decision at issue here does not reveal that the ALJ considered any factor relevant to weighing these medical opinions except that "the extreme limitations are not supported by objective medical evidence." (R. 14). Moreover, as Plaintiff's brief suggests, the ALJ did not point to evidence requiring,

revealing, or even suggesting, that the limitations opined by Drs. Moncure and Carson could not be supported. Here, the ALJ did not make his decision sufficiently specific to reveal the reasons for the weight assigned to the medical opinions. He merely made conclusory findings regarding the weight accorded each medical opinion without explaining the rationale for those findings. That is not sufficient.

"[T]he opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Doyal, 331 F.3d at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).

> When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[]' the treating physician's report, not the other way around." Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988). The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled.

Goatcher, 52 F.3d at 289-90 (citing Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

The ALJ must give reasons in the decision for the weight he gives the treating source opinion. Watkins, 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey, 816 F.2d at 513).

Here, the ALJ noted that Dr. Mintz (a nontreating source) recommended that Plaintiff be retrained, and the ALJ summarized the report of Dr. Cornett (another nontreating source). (R. 11, 14). He did not summarize in any way the medical opinions

of the state agency physicians and psychologists (nonexamining sources), or of Drs. Moncure and Carson (at least potentially, treating sources). He then announced his determination that he had given "significant weight" to the nonexamining source opinions, "less weight" or "partial weight" to the potential treating source opinions, and "more weight" to the "objective findings" of the nontreating sources. There is no indication in the decision at issue that the ALJ examined the other physicians' reports to see if they outweighed the reports of the (potential) treating sources. Other than the conclusory statement that Drs. Moncure's and Carson's "extreme limitations are not supported by objective medical evidence," the ALJ provided no rationale for the weight accorded any of the medical opinions, much less a rationale for the weight accorded the (potential) treating source opinions.

The decision must be reversed, and the case must be remanded to the Commissioner for a proper weighing of the medical opinions in accordance with the legal standard explained herein.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for proceedings consistent with this opinion.

Dated this 19th day of July 2012, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**